**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DANIEL T. GALENA, Individually          )
and on Behalf of the Citizens of        )
Erie County,                            )
                                        )
                        Plaintiffs,     )
                                        )          Case No. 1:07-cv-89-SJM
            v.                          )
                                        )
FIORE LEONE,                            )
                                        )
                        Defendant.      )


**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District J.,

  Plaintiff Daniel T. Galena commenced this action under 42 U.S.C. § 1983,[1] claiming that his rights under the First Amendment were infringed when the Defendant Fiore Leone, then Chairman of the Erie County Council, ejected him from a public meeting of the Council held on March 20, 2007.  Following trial, the jury returned a verdict in favor of the Plaintiff in the amount of $5,000.00.  Presently pending before the Court is the Defendant's motion for judgment as a matter of law.  For the reasons that follow, the Defendant's motion will be granted.

---

  [1]  Section 1983 provides a private right of action as against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...

42 U.S.C.A. § 1983.  This Court's jurisdiction is premised on 28 U.S.C. §§ 1331 and 1343.

## I.  STANDARD OF REVIEW

Rule 50(a)(1) of the Federal Rules of Civil Procedure authorizes the entry of judgment as a matter of law according to the following standard:

> **(1)  In General.**  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
>> **(A)**  resolve the issue against the party; and
>>
>> **(B)**  grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).  A motion for relief under Rule 50(a) may be made at any time before the case is submitted to the jury.  Fed. R. Civ. P. 50(a)(2).  Where, as here, the court does not grant the motion, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b).  Such a motion may be renewed within 28 days following entry of judgment.  Here, judgment [65] was entered in favor of the Plaintiff on August 4, 2009. Defendant filed a timely renewed motion for judgment as a matter of law [74] on August 13, 2009.

In deciding the Defendant's Rule 50 motion, the Court must view the evidence in the light most favorable to the prevailing, non-moving party – *to wit*, the Plaintiff, giving him the benefit of every fair and reasonable inference.  *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 209 (3d Cir. 2008).  Generally, a Rule 50 motion should be granted only if the evidence is not sufficient for a jury reasonably to find liability.  *Brown v. Daniels*, 290 Fed. Appx. 467, 470, 2008 WL 3890380 at **2 (3d Cir.  Aug. 22, 2008) (citing *Lightening Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993) and Fed.R.Civ.P. 50(a)).  *See also Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir.1993) (A Rule 50(a) motion should only be granted if, viewing all the evidence in the light most favorable to the party opposing the motion, no jury could decide in that party's favor).

## II.  BACKGROUND

Galena is a resident of Erie County, Pennsylvania.  In early-to-mid 2006 he began attending meetings of the Erie County Council out of an interest in observing how public tax dollars were being spent.  (N.T. 3-4, 23.)[2]  County Council meetings were held every two weeks on Tuesday evenings.  (N.T. 23.)  Galena was one of a group of three or four individuals who regularly attended Council meetings.  (N.T. 5.)  Though he did not make every one, he averaged at least one per month and spoke on about 14 or 15 occasions, addressing a variety of subjects.  (N.T. 23-24, 26.)  He primarily spoke about the tax and spending policies of county government.  (N.T. 5.)

Typically, Galena would begin his presentations by providing his name and address on the request of Council, after which he would turn to the audience and greet them by stating, "[G]ood evening taxpayers."  He would then usually turn to Council and "pan the seven members ... with [his] arm," and say, "[G]ood evening tax spenders," emphasizing the "spender portion."  (N.T. 6.)  This would "more than likely" induce Defendant Leone, who was Chairman of the Council, to "grimace and scowl."  (N.T. 6.)  During his comments to Council, certain members were "almost indifferent," while "maybe two or three others would be listening intently."  (N.T. 6-7.)  According to Galena, Leone would "more often than not... grin, and almost laugh" at what he (Galena) was saying.  (N.T. 7.)  Galena testified that, when other people would speak publically, Leone did not seem to laugh or grin at them in the same way.  (*Id*.)

This lawsuit arose from events which occurred during a meeting of the Erie County Council held on March 20, 2007.  The general order of business for that and every Council meeting, as set forth in Article V, Section 6.B of the Erie County Administrative Code, was as follows:

---

[2] Except as otherwise indicated, all citations to the trial record relate to the Notes of Testimony from August 8, 2009 (Doc. No. [80] and [80-1]).

1.     Pledge of Allegiance

2.     Optional Prayer or Invocation

3.     Roll Call

4.     Hearing of the Public

5.     Approval of the Minutes of Previous Meetings

6.     Reports of County Officials, Committees, or Special Advisory Groups

7.     Unfinished Business

8.     New Business

9.     Adjournment

(N.T. 7-8, 15, 81-83, Pl.'s Ex. 1, p. 164.)

Members of the public were permitted to comment on any subject they wished to address during the "Hearing of the Public" portion of the meeting.  (N.T. 4, 80-81, 94.) A speaker who provided advance written notice of his desire to speak was allotted five minutes to address Council; those who provided no advance written notice were allotted three minutes.  (N.T. 81, Pl.'s Ex. 1, at §§ 8.A and 8.B, p. 166.)  Members of the public were not permitted to speak in any portion of County Council meetings other than the "Hearing of the Public" portion.  (N.T. 15, 42-43, 69, 81-83, 92; Pl.'s Ex. 1, [68] at §§ 6.B, 8.A and 8.B.)[3]  The adoption of ordinances was commonly taken up by the Council as "New Business" during the latter portion of the meeting.  (N.T. 15, 59, 83.)

On the evening in question, *to wit*, March 20, 2007, four citizens addressed

---

[3] The Administrative Code does not expressly state that public comments must be limited to the portion of meetings designated for the Hearing of the Public, but such an interpretation is entirely consistent with the language and structure of the Administrative Code, and Plaintiff has not contended otherwise.  Moreover, the trial record establishes as a matter of uncontroverted fact that:  Leone had been involved in drafting the version of the Administrative Code at issue here; he interpreted the Code as imposing such a restriction; he had served on County Council for 32 years; and for the past 32 years, Council meetings had been conducted consistent with that interpretation.  (N.T. 51, 57, 66, 92, 100.)

Council during the Hearing of the Public portion of the meeting.   The minutes of the

meeting reflect the following occurrences:

> Gil Rocco, ... approached Council to speak regarding the Smoking Ban.
> He noted that [the] Council solicitor [had] stated this ban was not legal, but
> Council went forward despite that opinion.  He appreciated Mr. Leone's
> appearance at the court hearing, and believes the county was trounced at
> that hearing, and there are no grounds for appeal.  Mr. Rocco feels there
> is a flawed decision making process going on, and Council cannot break
> the law simply because they think they know better or have a better idea.
> He also asks where the silent majority is; they do not show up to speak.
> He cannot find anyone in favor of this ban.

> Renee Vendetti, Erie, stated that over one year ago, she asked Mr.
> Mitchell for the indicated status to be pushed so it was out of
> Pennsylvania.  Nothing has been done.  She asked why the County is
> paying $60,000 a year for lobbyists when Mr. DiVecchio and Mr. Wiley go
> to Washington, DC and Harrisburg to lobby for money.  This is a waste of
> taxpayer money.  The smoking ban was an improper motion according to
> Roberts Rules of Order.  There are no specifics regarding the minutes in
> the Home Rule Charter, so Roberts Rules must be followed, and the
> minutes should be verbatim.

> Kenneth Francis Simon Przepierski ... stated that Mr. Rocco does not
> realize that the whole smoking ban was dredged up to be a big smoke
> screen so that Council can fly through agendas bumping first readings to
> second readings.  He referred to Ordinance 31 on the agenda regarding
> the creation of gaming fund budget bureaus, and asked who would be on
> all these bureaus.  The monopoly of properties that went through tax
> exoneration at the last meeting was a lot of money just exonerated.  He
> also asked about the expenses at Pleasant Ridge Manor, and feels the
> budget should be trimmed.

> Maria Foster, ... stated this Council's agenda has been to break the law.
> Council continues to allow the Office of Children and Youth to violate the
> law even though this agency is under Council's and the County
> Executive's jurisdiction.  She referred to the administration's trip to
> Washington, DC as a pleasure trip. Council violates Constitutional rights,
> the Pennsylvania Constitution, the Administrative Code, and Roberts
> Rules of Order.  Politicians have forgotten many things, except when it
> comes to getting an extra perk, a business ally, or maybe a little cash in
> their pocket.  She stated Council does not take the people before them
> seriously.  Council can be held accountable when violating the law.  She
> warned Council to stop breaking the law.

(Pl.'s Ex. 4 [71] at p. 2.)

Following the Hearing of the Public, the Council took up approval of the minutes

from its prior meeting and received a number of reports from various committees and

council members.  Thereafter, Leone, as Chairman of County Council, addressed the

attending public.  The minutes from the March 20, 2007 meeting describe his

comments as follows:

> Mr. Leone then addressed Ms. Vendetti, Ms. Foster and Mr. Przepierski.
> Mr. Leone keeps hearing that Council breaks the law.  He cautioned these
> individuals to be careful when they tell Council they want to be taken
> seriously, because Council should be taken seriously as well.  It seems
> that no matter what, some people cannot be pleased.  He recalled a story
> his father told him – if you pass out ten dollar bills, people will complain
> that they're not twenties, and he feels his father was probably right.  This
> seems to be the situation here; no matter what Council does, it just isn't
> enough.  People think Council Members should be available 24 hours a
> day, doing everything they possibly can.  Although he probably puts in
> more time than other members, it is because Mr. Leone has the time.  He
> reminded the audience that this is a part-time job.  Council Members are
> legislators, and Council is getting tired of some of the issues being
> brought up.  He again cautioned people to be careful, because, if
> necessary, Council will take the matter to court.

(N.T. 16; Pl.'s Ex. 4, pp. 5-6.)

Thereafter, Council took up consideration of several ordinances.  (Pl.'s Ex. 4 [71]

at p. 6.)  During this time, a motion was made by one Council member to immediately

move a newly introduced ordinance from the initial First Reading to a Second Reading.

(N.T. 17.)   The motion was approved by the requisite number of Council members and

Leone asked the Erie County Clerk to begin reading the ordinance under consideration.

(N.T. 83-84; Pl.'s Ex. 1, § 4.D, p. 163.)   At that point, the following exchange occurred:


| | |
|---|---|
| Mr. Leone: | Next item, second reading of Ordinance 28, in its entirety, please. |
| Mr. Smith: | Second reading of Ordinance Number 28, 2007, "Fifth 2007 Public Health Fund Budget Supplemental Appropriation for public health Preparedness Grant."  (Mr. Smith reads ordinance body) |
| Mrs. Loll: | So moved. |
| Mr. Mitchell: | Second. |
| Mr. Leone: | Moved by Mrs. Loll, seconded by Mr. Mitchell.  Comments? |
| Mr. Galena: | Mr. Chairman, I have an objection. |
| Mr. Leone: | (uses gavel) |
| Mr. Galena: | Mr. Chairman, I have an objection. |

Mr. Leone:     You're out of order.

Mr. Galena:    You are in violation ...

Mr. Leone:     I said you're out of order, if you keep it up I'll have you taken out.

Mr. Galena:    I object.  You are in violation of [the] Pennsylvania Sunshine Act.

Mr. Leone:     Deputy, I want him taken out of here.

Mr. Galena:    And Erie County's Administrative Code.

Mr. Leone:     And I want him charged.

Mr. Galena:    You are in violation of the Pennsylvania Sunshine Act.

Mr. Leone:     I want him charged.  Do you hear, that's harassment.  You're not going to get away ... .

Mr. Galena:    I'm part of the assembly, I object to your proceedings.

Mr. Leone:     We'll file charges against you.

Mr. Galena:    You're welcome to do so.

(N.T. 22, 30, 84; Pl.'s Ex. 7 [72].)  This portion of the meeting was partially captured on a video recording (Pl.'s Ex. 6) and was captured in its entirety on an audio CD recording (Pl.'s Ex. 5), both of which were played for the jury.  (N.T. 20.)   The audio and video recordings show that, as Galena was being escorted out, Leone remarked to the audience, "Anyone else want to go?"  (Pl.'s Ex. 5 and 6.)

According to one councilman present during the exchange, Galena's demeanor was boisterous, but his comments were not insulting, threatening, insolent, slanderous or obscene.   (N.T. 40, 43.)  Galena testified that Leone's initial verbal response to his objection – *to wit*, "You're out of order" –  was stated in a "loud, angry tone."  (N.T. 18.) A deputy sheriff present during the incident described Leone as "pretty animated, ... pounding the gavel."  (N.T. 36.)  In a report authored the same evening as the incident in question, the deputy sheriff indicated that Galena had repeated his objections to Leone in a "calm manner," while Leone kept demanding in an "elevated voice" that Galena be removed from the meeting and charged.  (Pl.'s Ex. 8.)   Leone admitted at trial that he "certainly wasn't pleased" and was indeed "a little angry over the fact that

7

[Galena] interrupted the meeting," as he felt "[i]t would be difficult for anybody to hold any kind of a meeting if people get up and start objecting."  (N.T. 66.)

Leone testified that his earlier comments as described in the minutes had been directed at Ms. Vendetti, Ms. Foster and Mr. Przepierski, all of whom regularly attended Council meetings and participated in the Hearing of the Public portion of those meetings.  (N.T. 54.)  Leone stated that the final reference to "taking the matter to court" was a reference to action for defamation, as certain individuals who spoke during the public hearing portion would accuse Council of breaking the law and call them names.  (N.T. 55, 57, 67.)  According to Leone, Galena had never defamed him or called him names prior to the March 20, 2007 meeting, except to say (as Leone described it), "that I was illegal, as far as some of the issues were concerned, he said that a few times when he addressed Council."  (N.T. 55, 57-58.)  Leone testified that, while council members had indicated they were a little "fed up" with accusations of illegal conduct, Galena's name had never been specifically mentioned as someone with whom council members were "fed up."  (N.T. 67-68.)

Despite Leone's threat to file charges against Galena following the March 20, 2007 incident, no charges were ever filed.  Leone had originally intended to press charges for disorderly conduct or disturbing the peace but, after consulting with the county solicitor, he decided against filing charges and opted instead to send Galena a letter.  (N.T. 70.)

Leone testified that his comment to Galena about filing harassment charges came as a result of the fact that this was the second occasion on which Galena had interrupted Leone's speech during the non-public portion of a Council meeting, the prior interruption having occurred during the January 2, 2007 meeting of County Council.  (N.T. 90; Def.'s Ex. B [67].)  The trial record includes a partial transcript of that event, which reflects the following exchange between Leone and Galena:

> Mr. Leone:     Every time something comes up, it seems like this Council is
>                blamed for everything.  We're probably to blame for the
>                deficit that the Country's in right now.  I'm sure that must be

> our responsibility too.  We're talking about burglary and vandalism in Fairview.  I don't know who here has a badge that's going to go out there and resolve that issue, and I'm certainly not interested in ...

Mr. Galena:    The Sheriff, the sheriff.

Mr. Leone:     No, the Sheriff...

Mr. Galena:    The Sheriff.

Mr. Leone:     (uses gavel)  The Sheriff does not ...

Mr. Galena:    You want to ban smoking, but you don't want to do anything out there.

Mr. Leone:     You keep that up, I'm going to have you taken out.  You had your chance to speak.

Mr. Galena:    Yeah, I had a real chance.

Mr. Leone:     Yes, you did, and I'm telling you for the last time.  If I have any more comments from you, I'm having you removed from here.  I've listened to you, now it's your turn to listen to me.  The Sheriff doesn't have that responsibility.  I'm a city taxpayer.  We have a police force here.  I don't intend to spend city tax dollars to send a sheriff out there.  That's the state police responsibility if you don't have a police force.

(Def.'s Ex. B [67].)[4]

Galena's objection on March 20, 2007, although not fully articulated at the time, concerned his interpretation of the Erie County Administrative Code and the Pennsylvania Sunshine Act.  According to Galena's interpretation of the Administrative Code, proposed ordinances had to be introduced to the public on a Council meeting agenda and made available to the public 72 hours before the meeting at which the first

---

[4]  Leone testified that this interruption occurred during the business portion of the January 2, 2007 meeting.  (N.T. 90-92.)  While Galena denied any recollection that he had previously spoken during the business portion of the meeting (N.T. 28-29), a comparison of the transcript of the January 2, 2007 incident (Def.'s Ex. B [67]) with the meeting minutes from that same date (Ex. A [68]) establishes that the interruption occurred after the Hearing of the Public had closed, after various reports had been received by Council, and during a time when Leone was making comments.  Plaintiff has not challenged the accuracy of either the transcript or the minutes from the January 2, 2007 meeting.

reading would be made.  (N.T. 8.)  Council could not vote on any ordinance until at least seven days after the first reading, unless the ordinance in question concerned a matter of emergency.  (N.T. 8-9, 12.)  Often, during 2006 and 2007, Erie County Council did not follow this procedure and instead waived the first reading of a particular ordinance and voted on the ordinance all at the same meeting.  Galena researched the matter and believed that, in the years leading up to the March 20, 2007 meeting, Council had followed this truncated procedure 64 times in 2006 and 14-15 times in 2007.  (N.T. 7-12; Pl.'s Ex. 2 and 3.)   Galena considered this practice to be a violation of the Pennsylvania Sunshine Act because, in his view, the public was being deprived of its right to review the ordinances – and thus, expenditures of county tax dollars – before Council voted on them.  (N.T. 9-10.)

Leone maintains that he did not recognize or understand the basis of Galena's objection at the time it was raised.  (N.T. 59-63, 69-70.)  Indeed, Leone testified that, at the time he ruled Galena out of order, he did not know what Galena intended to say.  (N.T. 72.)   Galena admits that he did not fully express the content of his objection because Leone refused to recognize the objection.  (N.T. 32.)  In fact, at no time prior to the March 20, 2007 meeting had Galena discussed the matter that was the subject of his objection at the March 20 meeting.  (N.T. 26.)  However, another individual who regularly attended County Council meetings had addressed the issue to Council at that same evening.  (N.T. 14; Pl.'s Ex. 4 [71] at p. 2.)

Galena admits that, on all of the prior occasions when he had addressed County Council during the Hearing of the Public portion of the meetings, he had been permitted to speak without incident.  (N.T. 29.)  He further admits that, during the March 20, 2007 meeting, he had not chosen to speak during the time designated for "Hearing of the Public" and instead attempted to voice his objection only during the business portion of the meeting.  (N.T. 14, 22, 30.)  He maintains this is because did not have a "crystal ball" and could not predict with certainty what would occur during the business portion of the meeting; nonetheless, he acknowledged at trial that, based on Council's prior

10

history, "there was a good chance that they would move first readings to second readings" during the March 20 meeting.  (N.T. 14.)

Leone testified that he has served on County Council for 32 years and has had approximately eight separate year-long tenures as Chairman.  (N.T. 58, 79-80.)   During his 32 years on Council, Leone had never experienced an occasion, aside from the March 20, 2007 incident, where he had had to have someone removed from a meeting. (N.T. 58-59.)

Leone testified that he was not personally acquainted with Galena but knew him through Galena's attendance at County Council meetings.  (N.T. 52-53, 86, 92-93.) Leone's only contact with Galena was at those meetings, with the possible exception that Leone may have, on one occasion outside of a meeting, discussed with Galena a matter that was pending before Council.  (N.T. 52-53, 86-87.)  Leone testified that he bore no personal animosity toward anyone because of the opinions they expressed, but he believed that citizens were required to speak during the part of Council meetings designated for public comment.  (N.T. 57, 94-95.)  Leone stated that, "quite a few times" on prior occasions, he had found Galena's comments to be "on the mark," although there were also "a few times that he wasn't."  (N.T. 53-54.)  Leone testified in particular to an objection which Galena had lodged to the county sheriff acquiring a boat – an issue as to which Leone and Galena agreed.  (N.T. 87-88.)

## III.  DISCUSSION

It is well established in this circuit that, when a public official excludes a citizen from a public meeting, the official must confirm his conduct to the requirements of the First Amendment.  *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006) (citation omitted).  The First Amendment, of course, protects against laws which abridge "the freedom of speech, ... or the right of the people peaceably to assemble, and to

petition the Government for a redress of grievances." U.S. CONST. amend I.[5]   The

Amendment's speech-related protections extend not only to the content of a person's

speech, but also to the speaker himself.  *Wilkinson v. Bensalem Township*, 822 F.

Supp. 1154 (E.D. Pa. 1993).

Where restrictions on free speech rights are concerned, the type of forum

dictates the nature of the permissible restriction.  In a quintessential public forum,

typically described as public streets and parks, "members of the public retain strong

free speech rights."  *Pleasant Grove City, Utah v. Summum*, --- U.S. ----, 129 S. Ct.

1125, 1132 (2009).  Content-based restrictions in such forums may be imposed only if

the restrictions are necessary to serve a compelling government interest.  *Id. (citing*

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).  In addition,

the government may enforce reasonable time, place, and manner restrictions which (1)

are unrelated to speech content; (2) are narrowly tailored to serve a significant

governmental interest; and (3) allow alternative ways of communicating the same

information.  *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 280 (3d Cir. 2004).  The

government may create designated public forums by deliberately opening government

property to the public for that purpose, in which case such forums are subject to the

same restrictions as the quintessential public forum.  *Pleasant Grove*, 129 S. Ct. at

1125, 1132 (citation omitted).

Alternatively, the government may create a limited forum, which is "limited to use

by certain groups or dedicated solely to the discussion of certain subjects."  *Pleasant*

*Grove*, 129 S.Ct. at 1132 (citation omitted).  The government may impose restrictions

on speech in a limited public forum, as long as the restrictions are reasonable and

viewpoint neutral.  *Id*. (*citing Good News Club v. Milford Cent. Sch*., 533 U.S. 98,

106-07 (2001)).  Our court of appeals has stated that, in a limited public forum,

---

[5] The First Amendment guarantee of free speech is incorporated into the
Fourteenth Amendment's due process clause and is therefore applicable against the
states.  *See Phillips v. Keyport*, 107 F.3d 164, 183 (3d Cir.1997).

"content-based restraints are permitted, so long as they are designed to confine the 'forum to the limited and legitimate purposes for which it was created.'" *Eichenlaub*, 385 F.3d at 280 (*quoting Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)).  Thus, "under contemporary public forum jurisprudence, a designated (as opposed to traditional) forum is reviewed under a sliding standard that allows for content-related regulation so long as the content is tied to the limitations that frame the scope of the designation, and so long as the regulation is neutral as to viewpoint within the subject matter of that content."  *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004).  Viewpoint-based restrictions, however, "violate the First Amendment regardless of whether they also serve some valid time, place, manner interest."  *Monteiro*, 436 F.3d at 404.

The case law from this circuit suggests that the forum at issue here – *i.e.,* the portion of the Erie County Council meeting which was reserved solely for the discussion of business by Council members – was a limited public forum.  *See Eichenlaub v. Township of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004) (holding that a "citizen's forum" at a public meeting is a limited public forum because "public bodies may confine their meetings to specific subject matter") (citation omitted); *Mobley v. Tarlini*, 641 F. Supp. 2d 430, 438-39 (E.D. Pa. 2009) (portion of town council meeting which was dedicated to Council member (as opposed to public) speech was a limited public forum, since the forum was limited to certain groups – *i.e.,*, Council members and Township administrators, and certain topics – *i.e.*, motions and other Township matters; *Liberty & Prosperity 1776, Inc. v. Corzine*, 2009 WL 537049 at *6 n. 12 (D.N.J. 2009) (town hall meeting at issue was a limited public forum); *Thompson v. Lehman*, No. 4:06-cv-518, 2007 WL 2688691 (M.D. Pa. Sept. 10, 2007) (borough meetings were a designated public forum).

The upshot of the case law, as it pertains to this case, is that the government could, consistent with the First Amendment, confine citizens' speech at meetings of County Council to matters on the agenda at hand, *see Eichenlaub*, 385 F.3d at 281,

and could impose reasonable content-neutral time, place, and manner restrictions on speech at the meeting, so long as those restrictions were narrowly tailored to serve a significant governmental interest and left open ample alternative channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). However, no government official could impose limitations on citizens' speech based upon the speaker's identity or disfavor with a particular viewpoint on matters under discussion. *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006); *Wilkinson v. Bensalem Township*, 822 F. Supp. 1154 (E.D. Pa. 1993).

The present dispute implicates, at least in theory, two questions. The first is whether the regulation at issue – *i.e.,* the rule that citizen speakers confine their comments to the part of the meeting devoted to the Hearing of the Public – constitutes a facially valid time, place, and manner restriction under the foregoing standards. The second is whether the regulation, if facially valid, was nevertheless applied in a manner that discriminated based upon the identity or viewpoint of the speaker.

**A.**

Turning initially to the first inquiry, we recall that a time-place-manner restriction is valid if it (1) is unrelated to speech content; (2) is narrowly tailored to serve a significant governmental interest; and (3) allows alternative ways of communicating the same information. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 280 (3d Cir. 2004). Our Circuit Court of Appeals has recognized that "whether a restriction on the time, place, or manner of speech is reasonable presents a question of law. However, the reasonableness of a restriction involves an underlying factual inquiry" including, among other things, the question whether the restriction leaves open ample alternatives for communication of information. *McTernan v. City of York, Pennsylvania*, 564 F.3d 636, 646 (3d Cir. 2009). "These elements involve subsidiary fact questions that must be submitted to a jury, except where the evidence applicable to a particular element entitles a party to judgment as a matter of law. *Id*. (*citing Pouillon v. City of Owosso*, 206 F.3d 711, 717-18 (6th Cir. 2000); *Ovadal v. City of Madison*, 416 F.3d 531, 537-38

14

(7th Cir. 2005); *Colacurcio v. City of Kent*, 163 F.3d 545, 558 (9th Cir. 1998) (Reinhardt, J. dissenting)). *See also Marcavage v. City of Philadelphia*, 271 Fed. Appx. 272, 275, 2008 WL 858677 at **3 (3d Cir.  April 1, 2008) (No. 07-1049) (sufficiency of any alternate channels for communication is a component that must be submitted to the jury) (citing *Pouillon*, supra).

However, the issue whether a rule is a facially valid time-place-manner restriction is conceptually distinct from the issue whether the restriction was applied in a pretextual or discriminatory manner.  *See, e.g., Mobley v. Tarlini*, 641 F. Supp. 430, 439 (E.D. Pa. 2009) (recognizing that, although a defendant's mere use of Robert's Rules of Order at a township council meeting is a permissible time, place, and manner restriction and permissible under the First Amendment, the defendant's particular application of Robert's Rules may amount to impermissible viewpoint discrimination which offends the First Amendment).  Significantly, the latter issue, which I will address *infra* in part B., is the only issue which was submitted to the jury, as the Court's final instructions to the jury indicate:

> When a public official, such as the defendant, excludes a citizen from a public meeting, he must conform his conduct to the requirements of the First Amendment.  Under applicable First Amendment law, a meeting of the Erie County Council is considered a limited public forum, and speech occurring there may be restricted within certain limitations.  The Erie County Council, and the defendant, as Chairman of the Council, are entitled to impose reasonable restrictions on the time, place and manner of speech by citizens at a meeting in order to preserve order and decorum.

> On the other hand, the defendant, acting as Chairman of County Council, is not entitled to suppress speech occurring during a meeting because of the identity of the speaker or because of any disagreement the defendant may have with the viewpoint that is being expressed.  Suppressing speech for either of these purposes in the context of this case is a violation of the First Amendment.

> Accordingly, if you find that, in ruling the plaintiff out of order and ordering his removal from the March 20, 2007 meeting of County Council, the defendant acted with the intention of imposing reasonable restrictions on the time, place, and manner of the plaintiff's speech to preserve order and decorum at the meeting at the meeting, you should enter your verdict for the defendant, Mr. Leone.

> If, on the other hand, you find that, in ruling the plaintiff out of order

15

and having him removed from the March 20, 2007 meeting, the defendant
acted with the intention of suppressing the plaintiff's speech based on its
message or based on the identity of the speaker, then you should enter
your verdict on liability for the plaintiff, Mr. Galena.

(N.T. 8/4/09 [85] at pp. 9-10.)  The Special Interrogatories submitted to the jury required

them to determine, with respect to liability, only whether they found, "by a

preponderance of the evidence that the Defendant violated the Plaintiff's First

Amendment rights by having him removed from the March 20, 2007 meeting of Erie

County Council."  (Jury Verdict [63], Special Interrogatory # 1.)

Consequently, the jury was never called upon to decide whether, as a factual

matter, the regulation requiring citizens at Council meetings to restrict their comments

to the Hearing of the Public:  (a) was content neutral; (b) was narrowly drawn so as to

advance an important governmental interest; and (c) left open alternative means of

communicating the Plaintiff's message.  Instead, those issues were properly removed

from the jury's consideration without any objection from Plaintiff, and any challenges

along those lines have therefore been waived.

Nevertheless, even if the Plaintiff had not implicitly conceded the facial validity of

the subject time-place-manner restriction, any factual challenges as to its validity are

foreclosed by the record here.  A law regulating speech is considered content neutral if

it applies to all speech irrespective of the ideas or views expressed.  *See Turner Broad.*

*Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994).  Here, there is no real dispute that the

restriction which Leone was purporting to enforce – *to wit*, the rule that citizen speakers

confine their remarks to the portion of the meeting designated for the Hearing of the

Public – was facially content-neutral.  The only significant limitations which the

Administrative Code places on citizens' speech are the requirements:  (1) that speakers

adhere to certain time limitations (3 or 5 minutes, depending on whether the speaker

provided prior notice of his intent to speak, Admin. Code § 8(A) and (B)); (2) that

speakers not be unduly repetitive of one another (Admin. Code § 8(C)); and (3) that

speakers refrain from comments or conduct that is insulting, threatening, slanderous,

obscene, boisterous, etc. (Admin. Code § 8(D)).  Such limitations regulate only the time and manner of speech, not the specific content or message.[6]

The second time-place-manner prong requires that the restriction be narrowly tailored to serve a significant governmental interest.  The proffered governmental interest at stake here is the preservation of order and decorum during meetings of County Council such that the Council can conduct its business efficiently, fairly, and effectively.  This is certainly an important governmental interest and Plaintiff has not contended otherwise.  *See, e.g., Collinson v. Gott*, 895 F.2d 994, 1000 (4th Cir. 1990) (Phillips, J., concurring) ("Because of government's substantial interest in having such meetings conducted with relative orderliness and fairness to all, officials presiding over such meetings must have discretion, under the 'reasonable time, place and manner' constitutional principle, to set subject matter agendas, and to cut off speech which they reasonably perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner.")  The requirement that the restriction on speech be "narrowly tailored" does not mean that it must be the "least-restrictive or least-intrusive means," of furthering the government's interest.  *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1264 (3d Cir. 1992) (*citing Ward v. Rock Against Racism*,

---

[6] In his brief in opposition to the pending Rule 50 motion, Galena portrays Leone's conduct as a content-related restriction on speech.  I interpret this line of argument as being directed to the actual subjective intent of Leone rather than the facial validity of the administrative rule; accordingly, this argument is addressed in part B, *infra*.

To the extent Galena does challenge the time-place-manner regulation as facially content-based, however, I find his argument unavailing.  As a designated limited forum, County Council meetings could legitimately be restricted in their content to that which conforms with the purpose of the forum – *i.e.*, the discussion of matters of Council governance.  *See* n. 5, *supra*.  Thus, even if the time–place-manner regulation is considered content based because, *e.g.*, its application depends on a particular message being unduly repetitious, such a restriction is permissible since it merely "confines the forum to the legitimate purpose for which it was created, discussing [Council] business."  *Mobley v. Tarlini*, 641 F. Supp. 2d 430, 439 (E.D. Pa. 2009).

17

491 U.S. at 798).  "Rather, the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'"  *Id.* (citing *Ward*, 491 U.S. at 799).  The preservation of order and decorum at meetings of Council would be difficult, if not impossible, to achieve without the restrictions limiting the time and manner of comments from members of the public, a fact which Galena has not disputed.

The third prong of the time-place-manner analysis requires that the regulation leave open alternative means of communicating the same information.  Galena appears to dispute the validity of the regulation insofar as it relates to this particular prong,  In effect, Galena contends that the rule requiring him to speak only during the Hearing of the Public precluded him from raising his specific objection because the time for the Hearing of the Public always precedes the portion of Council meetings devoted to new business.  Thus, Galena reasons, he could never be certain on any given occasion whether the Council would attempt to move ordinances from a first reading to a second reading and, by the time this perceived violation occurred, his time for speaking would have passed.  Assuming for the moment that this issue had not been waived, I find this line of argument unavailing.

Specifically, I conclude that the record here cannot support a finding that the regulation at issue failed to allow for alternative means of communicating the essence of Galena's message.  While it is true that the Hearing of the Public occurred prior to the time when Council undertook new business, it is also undisputed that the perceived violation – the moving of ordinances from first to second readings all in the same meeting – was a practice commonly employed by Council.  Galena in fact estimated that in the fifteen months prior to the March 20, 2007 meeting, County Council had employed this practice almost 80 times.  As Galena admitted at trial, history suggested there was a "good chance," based on the agenda for the March 20, 2007 meeting, that Council would move ordinances from the first to second readings on that occasion as well.  (N.T. 14.)  Moreover, Galena's assertion that he could not have meaningfully

18

voiced his objection during the time allotted for public comment is belied by evidence that another member of the public addressed this very issue that same night during the Hearing of the Public.  Although Galena may not have been able to predict with exact certainty that, at any given meeting, the perceived violation would occur with respect to a particular ordinance, the general practice was common enough that it could have been anticipated and the general substance of Galena's objection could have been meaningfully aired during the public hearing portion of the meeting.  Alternatively, Galena could have voiced his objection to this longstanding procedure at any subsequent meeting of Council during the Hearing of the Public.

Galena has also argued that the asserted time, place and manner regulation was invalid because its application in this case violated the terms of the Pennsylvania Sunshine Act, 65 Pa. C.S.A. §§ 701 *et seq.*  In fact, Galena argues that the Sunshine Act legally and factually distinguishes this case from decisions in other non-Pennsylvania federal courts.  Substantively, Galena relies on a provision of the Act which states that "[a]ny person has the right to raise an objection at any time to a perceived violation of this chapter at any meeting of a board or council of a political subdivision or an authority created by a political subdivision."  65 Pa. C.S.A. § 710.1(c). According to Galena, this provision of the Sunshine Act trumped the provisions of the Erie County Administrative Code and thereby gave him an unfettered right to speak when he did.  Galena makes much of Leone's admission that he was unaware of this particular provision of the Sunshine Act, and he argues that Leone's "[i]gnorance of the law is no excuse to justify the suppression of protected speech."  (Pl.'s Reply Mem. of Law in Opp. to Def.'s Mot. for Judg. as a Matter of Law [86] at p. 6.)

The problem with this argument is that it bears no legal relevance to the Defendant's potential liability under federal law.  Although Plaintiff's complaint originally included a claim for an alleged violation of the Pennsylvania Sunshine Act, that claim was withdrawn prior to trial.  (*See* Tr. of Oral Arg. held 8/15/08 [42] at pp. 25-29; Tr. of Hrg. held 3/31/09 [47] at p. 5.)  Thus, for purposes of this case as it was tried, the

lawfulness of the Administrative Code regulation, which restricts the time and manner in which public citizens could address County Council, is defined in terms of whether it complies with the mandates of the First Amendment to the U.S. Constitution, not in terms of whether it complies with the mandates of the Pennsylvania Sunshine Act.   At trial, this Court allowed some testimony as to the parties' differing interpretations of the Pennsylvania Sunshine Act only insofar as it provided a background explanation for why the Plaintiff believed he had a right to speak when he did.  However, whether in fact Galena had a right under *state* law to speak during the business portion of Council's meeting simply was not an issue of any legal consequence in this case, as the only legal claim prosecuted at trial was the alleged violation of Plaintiff's federal First Amendment rights.

To summarize, Leone argued at trial that, in ejecting Galena from the March 20, 2007 meeting of County Council, he was merely attempting to preserve order and decorum by enforcing a content-neutral time, place and manner regulation on speech – namely, the rule that citizen speakers must confine their comments to the portion of Council meetings designated for the Hearing of the Public.  The issue as to whether this rule in fact meets the demands of the First Amendment and therefore qualifies as a lawful time, place, and manner regulation was properly removed from the jury, and the case was submitted to the jury only with respect to the secondary issue – Leone's actual, subjective intent.  Thus, Galena's present challenges to the stated time-place-manner regulation – that it is trumped by the Pennsylvania Sunshine Act and/or that it fails to satisfy the requirements of the First Amendment because it does not leave open alternative means of communicating the Plaintiff's message – have been waived by virtue of the manner in which the case was submitted to the jury.

Even had they not been waived, however, I find as a matter of law that the evidence cannot support a finding that the regulation in question failed to leave open adequate alternative means of communicating the Plaintiff's message.  Moreover, I conclude that the viability of Plaintiff's claim pursuant to the Pennsylvania Sunshine Act

20

(*i.e.,* his claim that his substantive rights under that Act were violated by the manner in which the Administrative Code was enforced) is legally irrelevant to the issues now before the Court.  Accordingly Galena's present challenges to the subject time, place and manner regulation have no merit in light of the record now before the Court.

**B.**

The core factual issue which was decided by the jury in this case was whether Leone, in ejecting Galena from the May 20, 2007 meeting of County Council, acted with the intent to suppress Galena's speech based upon either the identity of the speaker or Leone's disagreement with the speaker's message.  In the context of applying summary judgment standards, our circuit court of appeals has stated that, "[w]hen a constitutional violation depends on evidence of improper intent, it is sufficient for the plaintiff to 'identify affirmative evidence from which a jury could find ... the pertinent motive,' in order to survive summary judgment on that issue."  *Montiero*, 436 F.3d at 406 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).  *See also Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (when improper motive is an element of the plaintiff's claim, the plaintiff may not withstand summary judgment simply by lodging general attacks on the defendant's credibility but must instead identify "affirmative evidence from which a jury could find that the plaintiff carried his or her burden of proving the pertinent motive.") (plaintiff inmate alleged that prison official violated his constitutional rights by intentionally mis-delivering boxes containing inmate's legal materials and personal belongings).  If the jury returns a verdict for the plaintiff, "judgment as a matter of law will be granted to the defendant only if that verdict is not based on sufficient evidence." *Montiero*, 436 F.3d at 406 (citing Fed. R. Civ. P. 50(a)(1)).

In this case, I find that the record is insufficient to support the jury's finding that Leone acted with the intent to suppress Galena's speech when he ejected him from the March 20, 2007 meeting of Council.  Galena points to evidence that he had been a frequent attendee at Council meetings and had been critical of Council in the past relative to Council's expenditure of county tax dollars.  On prior occasions, Leone had

21

reportedly scowled, grimaced, grinned or laughed during his comments.  Moreover, Galena testified that he did not notice similar reactions to other speakers' comments. He points to evidence suggesting that he had voiced his objections during the March 20 meeting in a "calm" manner and that it was Leone who was angry.  Plaintiff also points to evidence that, earlier in the same meeting, Leone had chastised certain individuals who had spoken during the Hearing of the Public and had threatened them with legal action.

All of this evidence, however, must be viewed in the context of the entire trial record which established, as undisputed fact, that:  Leone had served on Council for 32 years; he had been involved in drafting the version of the Administrative Code which governed the March 20, 2007 proceedings; he understood the Code as allowing citizens to speak only during the Hearing of the Public; he was unaware of any provision of the Pennsylvania Sunshine Act which required otherwise; and Council meetings had been run for 32 years consistent with this interpretation.  The record further established that:  Plaintiff had spoken at Council meetings on more than a dozen occasions prior to the night in question; on every one of those occasions, save two, he had addressed Council during the Hearing of the Public without any attempt having been made by the Defendant or anyone else on Council to suppress his speech; on the first occasion when he had spoken out of turn (January 2, 2007), he was gaveled down by Leone, warned that continued disruption of the proceedings would result in his removal, and at that point voluntarily left the meeting on his own; on the second occasion when he spoke out of turn (March 20, 2007), he was ejected only after he kept speaking, despite having been gaveled down and warned that he was out of order and would be removed if he kept talking.  As Chairman of the Council, Leone was the presiding officer and thus responsible not only for conducting Council's business in an orderly fashion; he was also responsible for maintaining order and decorum. Significantly, there is nothing in the record to suggest that Leone ever engaged in disparate treatment relative to the manner in which he ran Council meetings; for

example, there is no evidence indicating that other citizens who spoke out of turn, but whose message differed from the Plaintiff's, were permitted to speak outside of the Hearing of the Public.  Indeed, Leone testified without contradiction that this was the first occasion in his 32 years on Council that he had ever had to have a member of the public removed from a meeting.  There is likewise no evidence of Leone preventing the Plaintiff or any other individual from speaking during those numerous occasions when citizens addressed Council during the Hearing of the Public.  Despite evidence that certain individuals frequently spoke out at meetings in a manner critical of Council, there is no evidence suggesting that their speech was suppressed.

Galena has argued that, in effect, Leone's conduct amounted to a content-based restriction of speech or, worse, viewpoint-based restriction.  This Court is cognizant that viewpoint-based restrictions are never permissible, even in a limited public forum.  *See Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829 (1995) (states are forbidden from exercising viewpoint discrimination, even when the limited public forum is one of its own creation).  Content-based restrictions are generally permissible only in extremely limited circumstances,[7] *i.e.*, where the restriction is "necessary to serve a compelling state interest and ... [is] narrowly drawn to achieve that end."  *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992) (citation omitted).  As the Supreme Court has said, "... freedom of speech, though not absolute, ... is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Terminello v. Chicago*, 337 U.S. 1, 4 (1949) (internal and ending citations omitted).

---

[7] An exception exists with respect to limited public forums where, as we have noted, the government may restrict speech content to the extent necessary in order to confine the forum to the limited and legitimate purpose for which it was created.  *See Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 280 (3d Cir. 2004) (citation omitted).  This type of permissible content-based restriction is not at issue here.

Here, Plaintiff insists, there was no public inconvenience or unrest to justify Leone's conduct.

This line of argument, however, begs the very factual question at issue – *i.e.,* whether, in giving effect to an otherwise legitimate time-place-manner regulation, Leone acted with the subjective intent of suppressing speech. Galena's argument – that, in effect, no compelling governmental interest existed to justify a content-based restriction on speech – has relevance only to the extent that the jury would be justified in finding a content-based restriction in the first place.

I conclude that the record here cannot support such a finding. Viewing the evidence of record most favorably to Galena and giving him the benefit of every reasonable inference, it is undisputed that he violated the terms of the Administrative Code when he spoke during the business portion of Council's March 20, 2007 meeting. Before the substance of his objection was articulated, he was ruled out of order by Leone and warned that he would be removed from the meeting if he persisted in speaking out of turn. Galena nevertheless persisted in voicing his objection and was then ejected. Galena had a history of speaking during Council meetings on matters critical of Council but without any attempts from Leone or other members of Council to limit the expression of his message, so long as he spoke during the Hearing of the Public. On one other occasion when he spoke out of turn, he was gaveled down by Leone, advised that he was out of order, and warned that he would be removed from the meeting if he continued to interrupt Leone's comments. There is no evidence to suggest that Leone discriminated among members of the public in terms of how he enforced administrative rules of order at meetings of Council. Although Leone chastised three citizens at the March 20, 2007 meeting for what he considered baseless accusations of unlawful activity on the part of Council, Leone did not rule these individuals out of order or remove them from the meeting, as they had properly spoken during the portion of the meeting reserved for public comment. It is undisputed that, as Chairman of County Council, Leone was charged with maintaining order and

24

decorum at Council's meetings.  When Galena voiced his objection out of turn on March 20, 2007, Leone took action consistent with that responsibility.  Given all of the circumstances, the evidence here was insufficient to support a finding that Leone acted with the intent to suppress Galena's speech based on either an animus toward Galena or disagreement with his message.

## IV.  CONCLUSION

For all of the foregoing reasons, I conclude that the jury's verdict of liability against Leone is unsupported by a legally sufficient evidentiary basis.  Accordingly, Defendant's motion for judgment as a matter of law will be granted.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DANIEL T. GALENA, Individually        )
and on Behalf of the Citizens of      )
Erie County,                          )
                                      )
                  Plaintiffs,         )
                                      )          Case No. 1:07-cv-89-SJM
            v.                        )
                                      )
FIORE LEONE,                          )
                                      )
                  Defendant.          )

**ORDER OF JUDGMENT**

AND NOW, *to wit*, this 5th day of March, 2010, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS ORDERED that the Court's previous Judgment Order [65] entered on August 4, 2009 be, and hereby is, VACATED.

IT IS FURTHER ORDERED that the Defendant's Motion for Judgment as a Matter of Law [74] be, and hereby is, GRANTED.  JUDGMENT is hereby entered in favor of the Defendant, Fiore Leone, and against the Plaintiff, Daniel T. Galena.

s/      Sean J. McLaughlin
        SEAN J. McLAUGHLIN
        United States District Judge

cc:    All counsel of record.

26